# IN THE COURT OF APPEALS OF IOWA

No. 21-0644
Filed August 4, 2021

**IN THE INTEREST OF H.V.,**
**Minor Child,**

**J.H., Mother**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District Associate Judge.

A mother appeals the termination of her parental rights.  **AFFIRMED.**

Stephen K. Allison of Stephen Allison Law, PLLC, Des Moines, for appellant mother.

Thomas Miller, Attorney General, and Toby J. Gordon, Assistant Attorney General, for appellee State.

Nicole Garbis Nolan of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Vaitheswaran, P.J., and Greer and Schumacher, JJ.

**VAITHESWARAN, Presiding Judge.**

A mother appeals the termination of her parental rights to her child, born in 2014. She contends the district court "erred when it terminated [her] parental rights pursuant to Iowa Code section 232.116(1)(f)" (2020). That provision requires proof of several elements, including proof the child cannot be returned to parental custody. *See* Iowa Code § 232.116(1)(f)(4).

The background facts are recounted in a prior opinion reversing the district court's termination of the mother's parental rights to the same child based on "[t]he State's lax approach to proving its petition." *See In re H.V.*, No. 20-0934, 2020 WL 6157826, at *6 (Iowa Ct. App. Oct. 21, 2020). The court of appeals noted that the child "tested positive for marijuana at . . . birth," the child's father struck the mother "while she was holding the child," the parents acknowledged the child "witnessed domestic violence on other occasions," and the mother tested "positive for amphetamines and methamphetamine." *Id.* at *1–2.

On remand, the department of human services employee handling the case contacted the mother to discuss her circumstances. The employee scheduled a drug test. The mother did not appear for the test.

The State filed a new petition to terminate the mother's parental rights. The district court granted the petition following an evidentiary hearing.

On appeal, the mother raises a narrow challenge to the ground for termination cited by the district court. She asserts the department should have accommodated her request for court-ordered drug tests to ensure "accountability and documentation." In her view, the department's refusal to seek judicial approval of drug testing ran "afoul of the crux of a determination of reasonable effort."

The department has a statutory obligation to make "every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." Iowa Code § 232.102(7). The scope of that obligation "impacts the burden of proving those elements of termination which require reunification efforts." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). "The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent." *Id.*; *see* Iowa Code § 232.116(1)(f)(4); *In re L.T.*, 924 N.W.2d 521, 527 (Iowa 2019) (noting that section 232.116(1)(f) "invoke[s] a requirement of reasonable efforts by DHS"). The obligation is independent of a court order mandating a particular service. *See* Iowa Code § 232.102(7) (triggering obligation upon transfer of the child's custody to the department). If a parent wants additional or different services, the parent must "object to services early in the process so appropriate changes can be made." *C.B.*, 611 N.W.2d at 493–94.

The department satisfied its reasonable-efforts mandate. A department employee testified the mother "had been engaged in services since approximately "March of 2019" and "[d]espite her engagement in services and the positive drug screen results, she continued to deny any use of substances, [and] any issues in interpersonal relationships."

Following remand, another department employee testified she "afforded [the mother] numerous opportunities to provide . . . information, to allow . . . [a] visit . . . where [the mother] was living, to provide drug screens, [and] to talk . . . about any therapy or substance abuse treatment she was participating in." The mother "respectfully declin[ed] any services until they [were] court ordered." As a

result, the employee could not say that the mother was addressing her substance-abuse issues. She testified,

> I'm concerned that [the mother] had an opportunity to provide a drug screen that would show us if she indeed was free of methamphetamine in that moment and going back and going forward, so I don't think that I could assure that she was free of substance abuse at that time.

The mother also declined to participate in a scheduled home visit unless it was court-ordered. A week before the termination hearing, the mother changed her mind and requested a home visit. The visit was not scheduled, in part because the department employee "didn't have [the mother's] address."

The employee recommended against return of the child to the mother

> because [the mother] had not availed herself of a single opportunity to comply with any kind of services, telling us her story, meeting with us, allowing us to confirm whether or not she'd been clean and sober, allowing us to confirm her side of . . . two significantly concerning police reports and interactions with men that were violent with her, potentially having possession of a meth pipe.

The employee opined, "I don't think there was any substantive way she demonstrated she could be a safe and appropriate caretaker to [the child]."

The termination report prepared by the department summarized the post-remand state of affairs as follows:

> Since the TPR ruling has been reversed, the Department has asked on multiple times to meet with [the mother]. She finally agreed to a meeting via the phone on January 11, 2021. She reports to not having a home and to wanting to move to Kansas City. She has not provided drug screens as requested. She has not provided a release to obtain any mental health treatment. She has allowed her sister . . . to inform the Department that [the child] needs returned to her care and that [she] will not participate in any services until court-ordered. There is no information to show that [the mother] is in any different place than she was when rights were terminated the first time. She has continued to engage in at least two relationships which were violent. She has minimized these events. She was also caught with

drug paraphernalia and has not complied with services to demonstrate her sobriety.

The mother conceded her family was afforded services. She reluctantly admitted that the child was exposed to domestic violence in the home, and she acknowledged he was presently involved in therapy to address the trauma. She also confirmed therapy services were extended to her. She testified, "[I]t has helped me a lot, and I appreciate my relationship with [the therapist] that I've got now." The mother additionally confirmed that the department facilitated one visit per week until her parental rights were first terminated. After the court filed its order, the department allowed her to see the child on two occasions. And, when the second termination petition was filed, the mother testified she "actually declined [visits]" because it was "not in [her] son's best interest to bring [her] back into his life a month before termination."

The mother and child's therapists confirmed that they assisted the family up to the time of the second termination hearing. The mother's therapist reported that she began treatment in March 2019 and was "[currently] enrolled" in treatment. The child's therapist testified she treated the child from October 2019 to the present. She stated they were now "focus[ed] on the same things" they had previously addressed—"how to cope with different things that are going on." She echoed the mother's testimony about reinstatement of visits, pointing to the trauma the child experienced in the wake of prior visits. She cited "an increase in nightmares," "paranoia-based behaviors," and "aggressive behaviors," and the lessening of those behaviors after regular visitation ended.

On our de novo review, we conclude the department made reasonable efforts to reunify parent and child and, when those efforts failed, the department continued with efforts to achieve permanency. *See L.T.*, 924 N.W.2d at 528 ("Where it is inappropriate to return a child to the family home, the legislature specified that 'reasonable efforts shall include the efforts made in a timely manner to finalize a permanency plan for the child.'" (quoting Iowa Code § 232.102(7))). We further conclude the district court appropriately terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(f).

**AFFIRMED.**